case for the day is Martin v. Milwaukee County, Mr. Jones. Good morning, may it please the court. Andrew Jones on behalf of the defendant appellant Milwaukee County, Wisconsin. The central question in this case is whether Milwaukee County is required to indemnify former corrections officer Xavier Thickling for his misconduct in having sexual intercourse with Shonda Martin and in having her perform oral sex on him, all unbeknownst to Milwaukee County, while she was an inmate in the Milwaukee County Jail. This question or the resolution of this question is a fault on the part of Milwaukee County, whether under section 1983 or otherwise. Instead, Ms. Martin's claim rises under Wisconsin's Municipal Indemnification Statute, section 895.46 of the Wisconsin statutes. That statute was enacted to protect public officials from personal liability for wrongs committed in the course of their duties, and under that statute the county is only required to indemnify Mr. Thickling for the judgment Ms. Martin has obtained against him if he was acting within the scope of his employment when he had sex with Ms. Martin in the jail. The facts in this case are not in dispute, and based on those facts, no reasonable jury could have concluded that Mr. Thickling was within the scope of his employment under the facts of this case. Specifically for two reasons, the evidence was insufficient to show that either of the following two required elements were met under Wisconsin law. One, that Mr. Thickling was performing the kind of work that Milwaukee County engaged him to perform as a corrections officer when he had sexual intercourse and oral sex with Ms. Martin, or two, that he was intending somehow to benefit the county to serve its purposes rather than his own when he engaged in this misconduct. Well, so he clearly wasn't discharging the duties that he had been hired to perform when he sexually assaulted her, but what about when he escorted her to the attorney meeting room? What about when he went to the infirmary, you know, to get her the compress? Those things were things that were part of his job duties, right? So it seems like one of the difficulties in these cases is settling on the level of generality at which you're going to identify duties. So those things were within his duties, escorting her back and forth. Generally speaking, he had the responsibility, like any other corrections officer in that facility, to maintain the care and custody of those inmates, and at times that would include moving an inmate from point A to point B in the jail, facilitating health care for those inmates in the jail, making sure they don't escape, making sure they don't misbehave. So if this occurs in the course of his discharge of those responsibilities, why is it that it's not something that occurred during the course of his scope, within the scope of his employment? Because they didn't, the misconduct didn't occur in the discharge of those general duties. Our position is that she is not suing him for something he did while he was moving her to and facilitating access to medical care. She is suing him for sexual assault. And there is a line between those general duties that he is charged with performing in the jail and the sexual misconduct here. And there's also an issue of intent, whereby an officer may have a particular intent in moving an inmate from point A to point B, but clearly that intent will have changed and become a personal intent when he engages in the kind of sexual misconduct that Mr. Thicklin did here. And to address the question of whether it's in the scope or not, at the level of generality that Ms. Martin is urging, so on the idea that because he had general responsibilities in the jail as an officer on duty, like moving inmates, like disciplining them, etc., that Mr. Thicklin's behavior was somehow within the scope, that essentially would undo the scope of employment test. There literally would be nothing that Mr. Thicklin could do while he was on duty that would be outside the scope of his employment. And I don't think that analysis, the analysis that's proposed by Ms. Martin, is consistent with the way Wisconsin appellate courts have addressed that issue. So for instance, pointing to the Block v. Gomez case, the Corntved v. Advance Healthcare case, and the LLN v. Clowder case, all Wisconsin Court of Appeals decisions. In Block, you had a situation where a therapist engaged with a sexual relationship with his patient. So that therapist had a responsibility. His job was to engage in a very personal therapeutic relationship with his patient. But he was still outside the scope of his employment as a matter of law when that shifted to a sexual relationship, particularly because he was in direct violation of the limitations, the orders, the directions that his employer had placed on his fulfillment of those therapeutic responsibilities. The same thing was true with respect to the priest in LLN v. Clowder. And in the Corntved case, a lab technician accessed, at a health care system, accessed patient information and then shared, without a business reason for doing so, and then shared that information with her husband. Well that lab technician, as part of her responsibilities, was accessing health care records was part of her duties and responsibilities. But when she accessed it for no business reason, and in violation of her employer's directions in terms of the circumstances when she could access the health care information, and then violated those directions further in sharing it with someone outside the hospital, she was outside the panel to decide. Here the plaintiff is saying that this defendant, I guess he's not the defendant, he was the guard, was using sex as a way to control his, the plaintiff here, as part of his duties. And isn't that a proper jury question? They cite a case, Desotel, I guess that's the way it's pronounced, which says that scope of employment is a jury question. You always submit it to a jury. And the jury is entitled to draw inferences, are they not, that the plaintiff's theory was correct based on, as you say, the uncontested facts here. Wisconsin courts time and time again, including the three cases I just discussed, which are very comparable circumstances, have concluded that scope of employment issues can in fact be resolved as matters of law. Say that louder. What? Oh, I'm sorry. Wisconsin courts, including in the three decisions I just cited, the Block case, the Cornfed case, the LLN case, have made clear that scope of employment issues are appropriate for resolution as a matter of law. And those cases all dealt with very analogous circumstances to those here. How do you distinguish Desotel, which is one of a number of cases, which say that scope of employment is a jury question? Even Desotel acknowledges that when the facts are not in dispute, which they are not here, and no competing inferences can be drawn from the facts, which I don't believe they can here, that scope of employment... Why can't they be? I'm sorry, Your Honor? Why can't the inference be drawn by the jury that this guy was using sex as a means of control? And don't... well, answer that question. Yes, Your Honor. So the proposition is that Mr. Thicklin was using sex as a means of authority and control. First off, Wisconsin law makes clear that whether an employee is using his position and the authority and control that position gives him to accomplish some illegitimate purpose, that that is not relevant to the scope of employment question. That's a color of law analysis in the Wisconsin Supreme Court, and analysis. Two, that proposition is based on basically no evidence and an irrational factual proposition that's being urged by Ms. Martin. There is no evidence that Mr. Thicklin actually thought that's what he was doing. There is no evidence that Ms. Martin actually was engaging in any sort of misconduct or misbehavior that would have required him or anyone else to pull over him. Well, he specifically told her on at least one occasion, I'm wearing blue and you're wearing gray or whatever that was. Yes. Which means that I'm the boss here because I'm a guard. And Ms. Martin testified that what he was telling her was, don't tell on me. This is her testimony. Don't tell on me because no one will believe you. So his assertion of authority, again, that's a color of law issue which no one disputes here. Not the scope of employment issue. And two, it's not him asserting there's some reason that I have to exert authority over you or control over you or discipline you. There frankly was absolutely no evidence in the record that in any of these situations there was any reason for him to be quote-unquote exerting authority or control over her, using force against her, or disciplining her. So that is a factual proposition that's based on a lack of evidence and speculation. And it ignores all of the evidence in the record as to the actual orders and directions that the county gave Mr. Thicklin. In terms of Wisconsin law says this is a crime. You cannot under any circumstance engage in this kind of behavior. Well, Wisconsin law and Illinois law and other laws also say that you're not supposed to beat up a prisoner or you're not supposed to shoot somebody who's running away from you. And yet those cases obviously find that these police officers usually are acting within the scope of their authority despite the fact, as the jury was instructed here, despite the fact that what they did was wrong. And there's a fundamental difference between a police officer or any public employee going out and doing something that he's been specifically instructed, authorized, warranted to do under his job, like affecting a lawful arrest, affecting any arrest, and using force as part of that arrest. There's a fundamental difference between an employee doing something like that and going a step too far, exceeding the authority he's been given, and an instance like this where an employee goes off and does something that is completely different in kind and nature from what he's been instructed to do and what he's warranted to do under the employment relationship. There is a fundamental difference here. So where you may have a situation as in Graham where an officer used excessive force in the course of affecting an arrest with the service revolver that his police department gave him to use and instructed him to use, he exceeded his authority there, but he was still within the scope. This is fundamentally different. You're basically saying that any type of sexual assault would never be within the scope of employment. That's not the position I'm taking, Your Honor. That's not the position the county is taking. You can foresee circumstances, even in a jail setting, where there is some kind of sexual contact where it would be a much closer call and may in fact be an issue of fact. An officer doing a pat-down search touches someone inappropriately. Officers do strip searches in jails under circumstances where there's an inappropriate touching as part of that strip search. That would be a different circumstance. The officer is sent out to do that search. So if I change my question to rape versus sexual assault, would you agree that that's what you're saying? That rape can never be within the scope of employment? Well, rape in this instance has nothing to do with consent or not consent. Would it ever? If we were to agree with you, would there ever be a case of rape that we would allow to be found by a jury to be within the scope of employment? It is always going to depend on the individual circumstances and if that rape somehow arises out of some employment dispute, some sort of physical interaction between a guard and an inmate, I can't account for all of the circumstances whether that would be in or without the scope of employment. But here, where the officer was specifically instructed not to do this, where it had nothing to do with the normal function of his responsibilities in the jail, and where there is lots of evidence that his intent was to do nothing other than serve his own purposes, it's impossible to find that it was within the scope of his employment. I'm going to run over your time a little bit because I need to follow up something here. First of all, you talk about it's a the question is, and this went to the jury, the jury was to determine whether or not this was within the scope of the employment, right? Judge Stattmiller sent the case to the jury, yes. Yes, so the jury is there. Now, I don't know, I haven't seen a transcript, but obviously if I'm representing her, this is unequivocally rape, and I assume she so said. She did say so. Yeah, and so if it's rape, and then if it's a question for the jury, then the jury is going to say it's raped, so the state's going to pay no matter what. And that's what would worry me about this, having a jury decide whether or not it's in the scope of his employment. Now, I haven't heard you arguing it, but it just seems to me if you're making an argument to a jury, and you know there's a deep pocket, not in Thickpin, or whatever his name is, he didn't even show up. I'm talking about the state of getting a 1.7 million plus 5 million punitive. 6.7 million dollars. Yeah, that's a lot of money for somebody who's unquestionably operating within the scope of his employment while he's executing a rape, and that's why I'm wondering about the question of law. It seems to me that has to be a question of law if I'm looking at it from that standpoint, and that I'm not sure how the judge would make that determination, but it would not be on the basis of any kind of sympathy or whatever for a person being raped. It's going to be a question of whether or not a reasonable jury or a judge really could say that committing a rape is within the scope of someone's employment, just because they happen to be doing, it happened to be during the hours of employment. That's about the only time it seems like that they can even say it's within the line of his duty. I think obviously there were very potentially, a very significant sympathy factor on the part of the jury for Ms. Martin. What happened, what the evidence showed happened, shouldn't have happened under any circumstances, and on top of that this jury, as the county has argued in its brief, was instructed improperly in a way that allowed the plaintiff to tell the jury that nothing having to do with the fact that this conduct was completely prohibited by law or by his employer was relevant to its say so. It was an inappropriate circumstance for the jury to be resolving this issue for all the reasons that we've stated. Okay, well that's, I just wanted to address that. I'm taking more time than I should have. Mr. Ainsworth. May it please the court, counsel. The county conflates sex with rape. Rape is not sex. Rape is violence. Rape is about control, domination, and that is what county guards in the Milwaukee County Jail are instructed to do with, above all else, is control inmates. To control them with discipline, to control them with orders, to control them with force, and main order within the jail to prevent... But he wasn't trying to maintain order. This is, so I have two questions about that. I mean, it's one thing when a guard in an excessive force claim, where the guard is trying to maintain order and goes too far. That's clearly within the scope of his employment. What he is doing is in an effort to serve the employer, but he goes too far. He wasn't trying to maintain order with her. I mean, he, and I agree, rape is about control and power and not sexual gratification, but that's, he wasn't trying to intervene in a prison fight or restrain her, and he also wasn't using a weapon of the sort. I mean, it's a different in kind to use his body in the way he was using his body as opposed to using a gun or fists or billy club. So can you help me see how this is close enough in kind that it falls within those other cases? So he's using his authority to control her movement. He is telling her, he's giving her orders. He's telling her what to do. He's telling her, I'm in gray, you're in blue. He is telling her that she has to obey. And in that sense, he's controlling what she does. But I hesitate to go down the road that it's okay as a matter of law to say that if a officer uses a baton and beats a suspect in a matter of gratuitous violence, which this court in Wilson said was a borderline frivolous argument to say that's not within the scope. Well, no, I agree. That's not what I was suggesting, that when someone tries to control a prisoner in the kind of way that the officer is trained to control a prisoner, right? Well, he used methods that they are trained to use. Rape is a method of trying to keep order in a prison? Not rape, but coercing obedience by threatening discipline by saying I'm in gray, you're in blue. This wasn't an arrest that went bad. This wasn't a prison fight where he was trying to restrain her. So he wasn't, it's not like those cases for that reason. But in every single instance, he was authorized and directed to control her movement. He was the infirmary officer. He was the floor control officer. He was assigned to her in every single one of these rapes to control her movement in some way to have authority over her. It wasn't like he was coming in from either off-duty or for some other branch of the jail to then interact with her. And every time he was doing the kind of things that jail So there are some states, and Wisconsin isn't one, who say that when you have power and access, you know, by virtue of your job, like California is one, that things that happen, you know, that you are able to do because of the power you have or the access you have because of your job, but then happen to be within the scope of your employment. That's not Wisconsin law, however. So it's hard for me to see what wouldn't be within a guard's scope of employment as you're within that jail perpetrated by a guard who has authority over a particular inmate is a jury question. And that's what the Wisconsin Supreme Court has said over and over again. If you look at Cameron, Cameron is three off-duty racist police officers who target three black civilians off-duty in the middle of the night, accost them, beat them up, and have them arrested. So you think our case is wrong, and granted it was Illinois law, with the prison riot and the guard opening the door to the jail cell and turning his back and then permitting the other prisoners to mob and beat up? I think it's a jury question. I think that under Wisconsin, Wisconsin is saying, the Wisconsin Supreme Court and Cameron said that is a jury question, where previously the circuit court said no, it's a matter of law, should be decided as a matter of law, and this Wisconsin Supreme Court and Cameron remanded for a trial on that, on scope of employment. But it's a question of law. I agree, but there's no question of fact, I mean that's why we have summary judgment, and judgment is a matter of law. There's no question of fact. Yes, you could say that's a jury question, but if you can't satisfy the standard of having enough evidence to permit a reasonable jury to conclude that it doesn't go to the jury. So it's not that it wouldn't be a jury question, it would be simply that the plaintiff didn't carry the burden to get it to the jury. Well, part of the situation we're dealing with is that we have a Wisconsin statute that is very broad for indemnification purposes. It was amended to remove the requirement of good faith. It is one of the most broad statutes because it includes indemnification for even punitive damages. So even if in a situation such as here, where a police officer or a law enforcement county's sheriff uses so much violence that punitive damages are warranted, the statute says that the municipality must indemnify that judgment against the officer, so in that way it... But that doesn't mean that it's overriding the judgment as a matter of law or summary judgment just because it permits indemnification on punitive damages. Well, it suggests an ability that somebody who uses force so egregiously and so beyond the bounds of common decency that punitive damages were warranted, that is still something that can be within the scope of employment. And if you look at Dessatelle, Dessatelle is a case where it says this kind of question, sexualized violence, should go to a jury and have a jury determine it. That's all we're asking. So you're saying you can never get, that's kind of an extraordinary claim, you're saying you can never get summary judgment or judgment as a matter of law on a case involving sexual violence when it's a question of whether it was in the scope of employment. You never get a jury trial. Is that true for violence, just plain old violence too? If the interaction between the two people, you know, if it's something that was on duty within this, where it's part of the person's job duties to interact with that person, and you look at the Graham case, I mean in Graham you have a situation where it's not in the course of an arrest, but the person is arrested face down, handcuffed behind their back, and a police officer in a psychotic instance comes up and executes the person by shooting them in the head. And this court said as a matter of law that is within the scope of employment. Yeah, because he was arresting the person, so that was a case of excessive force, I mean he got out of control, but he was the defense to indemnification was we prohibit murder. I agree with you that intentional torts or even crimes are not outside the scope of employment necessarily. I'm just surprised to hear you say that you think that there are always jury questions, that the statute takes away summary judgment and judgment as a matter of law without even saying it. So let me put a finer point on it. You could have situations like Polk County. In Polk County where you have direct evidence of intent, the plaintiff doesn't submit any evidence the other way. And that is a situation where you could have summary judgment because of the facts of that case. But in a circumstance like here where we have no direct evidence of intent, then DeSotel says that's the kind of case that has to go to a jury because you have competing inferences. And what are the inferences on the other side in this case? The competing inferences is that we prohibit sexual assault. This is not the kind of thing that we assign guards to Well that's true for every case where there's a dispute about indemnification, where there's a tort that's occurred, where somebody has been harmed. It is always the case that happens and in Graham this court says that is not enough. Simply because you said you prohibit this and because it is not your objective to murder people who have been arrested rather than to bring them to court, to have them face charges, that is not enough. What purpose of the jail was he serving by raping her? So he's maintaining order. He's controlling, he's controlling her. She didn't have an outcry. He told her I'm in gray, you're in blue. She didn't talk back to him. She didn't report him until as a 19-year-old woman who was pregnant, who was raped so hard that her mucus plug was dislodged and she had to be hospitalized for preterm labor because of the rape that he sustained against her. When she had her baby, she feared that her baby received a sexually transmitted disease from her because of rape by Officer Thicklin. That's the only reason that she reported it. There's no question about the result of the rape being very bad and regardless, we'll just accept those facts but what you're not pointing out here is sure somebody uses a gun, shoots somebody when they shouldn't, uses a baton, hits them too hard when they shouldn't. There's not going to be any case where someone uses his sexual prowess and rape someone in order to discipline them or to show who's boss. That's your argument. That is what rape is. And that's what a jury hears but a jury hears all about rape and how vicious it was and she's pregnant. All that's awful. So they're looking for a good reason to stick it to the state. So to answer that question, we did not have a runaway jury problem here. This is a jury that found against Miss Martin on her shackling claim. This is a jury that carefully considered each of the elements and found that she did not meet the elements of that claim and found against her and awarded her zero for being shackled while she gave birth. We ask juries all the time to decide some of the most complex issues in our society. When there's a gruesome, horrific crime and somebody's to be held accountable, we understand that the facts may be gruesome but we ask the jury to do their job and we trust them to do it. Was this woman shackled while she gave birth? I didn't hear that. She was shackled while she gave birth and we lost the claim so it's not part of the appeal but that was it was a horrific encounter for her. She testified at length about how awful it was to be shackled while she had to give birth and the jury said. I can understand. Yeah and the jury said you know what that's that's wrong. Their verdict was wrong but you weren't. Shackles are used for certain person for discipline. Yeah that goes on and it sounds pretty dumb to me. Yeah and the jury said that was wrong to do it to her but she wasn't harmed and so we're not going to rule. That's not the same thing. The shackling thing you say you lost that one well okay but whatever. Rape is so far-fetched away from any kind of a discipline. You say well that's about exercising control. In five different instances and varying methods of rape at least I guess she testified to each of those right? Yes. Okay so she describes all of these all of them are against her will etc. They're all bad and and that's where a jury really dislikes what happened to her and so most convenient way to do that is say well that's within the scope of his employment and therefore the state pays because they know that Thickman isn't going to pay anything. He didn't even show up. But we You're talking about a runaway jury. You think that's what it would take? A runaway jury? But we have other. Obviously not. You don't think it's a runaway jury but they decided whether or not was within scope of the employment in view of the fact that she was viciously raped. Which is something that Wisconsin directs us to do you know to get back to Judge Barrett's point about what California and having a foreseeability test. Wisconsin could have chosen an objective test. They chose a committing the tort and when you choose an in subjective intent test that says jury question. That is a quintessential jury's question and Stevenson one of the cases cited to the court it says exactly that. That this is the kind of intent question and this court has recognized that when you're talking about law enforcement officers questions about scope employment become much more difficult and if the guard had used a baton and sodomized Miss Martin rather than his penis would that alter the court's analysis and I think that's wrong. A baton is something that's assigned to him to use for discipline. And so there are other means that they're used to discipline to to say to tell a that the inmates are required to obey every command that's given to them by a guard. He wasn't disciplining on the part of the jail. I mean rape what he did was horrific and rape is about dominance and exerting the dominance and power of the jail and he he's a sick person who is exerting his own dominance and power over her for his own reasons. He wasn't trying to discipline her. Like I said he wasn't breaking up a fight or trying to arrest her. But we have a situation where he's interacting with her. He's directing her what to do. He's controlling her movements. He controls her meals. He controls her every aspect of her life visits telephone calls where she can go within the jail. Her safety. Whether force is used against her where the force is not. Well he acts in the scope of his employment for those things. And he's he's moving her from one part of the jail to another. So he had access and opportunity and authority that he used which is not Wisconsin's law. But he also he used that authority. He used what the jail had trained him to do and what had given him which is to compel compliance with his commands and with his directives by threatening discipline by threatening force. You know that's exactly what he used. That's what the guards use to get inmates to do anything they want in the jail because there's a lot more inmates than guards. You know and if they didn't have those tools at their disposal then there'd be anarchy within the jail. You mentioned in your brief that she was a difficult maybe that's a wrong word but she was a difficult inmate. Can you can you just say what that how that relates to the on six different occasions. She had spoken up and she testified to the jury that she was somebody who was vocal was a strong woman who would speak up about things that she did not like whether they be jail rules whether they be things circumstances that she didn't like. It's a it's an inference that in reaction to her being a strong person who vocalized complaints that Thicklin then. Was there any evidence that Thicklin was doing that to silence her? Was there any evidence that he said you know we want to silence your complaints don't complain. Just just that he told her I'm in gray you're in blue and he knew you know it was known that she was a strong person who would speak out and was not a subservient kind of prisoner. She was somebody who was loud and and just my cases cited by counsel block powder and corporate those are sex cases. We're talking about violence in the law enforcement context and there's nothing that we can bring from the sex cases over to what the Wisconsin Supreme Court and Court of Appeals has said applies to violence cases involving law enforcement. Thank you. Very briefly as I know I'd likely exceeded my time before I stepped down the first time. In the Copeland decision the Seventh Circuit rejected the same kind of argument about the the idea that an officer who commits a wrong is necessarily within the scope or is even a jury question simply because he is in controlling inmates. The panel in that case said that that argument was ludicrous. It's too general. Desitel that involved a case where the victim was arguing that as a as a matter of law the officer with it was within the scope of his employment when he sexually assaulted her. So the fact that the court there said it was okay to send that question to the jury wasn't necessarily true that he was within the scope of his employment. It wasn't just okay it had to go to the jury. I don't think that is a jury question. The court acknowledged that scope can be decided as a matter of law and in response to the argument by the plaintiff that it was necessarily outside the scope the court indicated that it was appropriate to send the question to the jury. The Mr. Thicklin knew anything about Ms. Martin's prior discipline problems. There's no evidence to connect anything she may have had in terms of discipline problem and his sexual assaults here. And the final point I would make is there is no evidence of his intent that Ms. Martin has offered other than the fact that he essentially was on the job and generally at work performing his general duties as a corrections officer to support the idea that he intended to benefit the county and against that there was all of the evidence of the fact that he was prohibited from doing it. He knew he's prohibited from doing it. Thank you counsel. Thank you.